IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARKO BOZILOVIC,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **No. 15-91** |
| | : | |
| **ERIC HOLDER, JR., ATTORNEY GENERAL, ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                                          **February 5, 2016**

## MEMORANDUM OPINION

Plaintiff Darko Bozilovic ("Plaintiff") is a native and citizen of Serbia who entered the United States on a non-immigrant visa and adjusted his status to that of a lawful permanent resident by virtue of his marriage to a United States citizen. After Plaintiff's naturalization application was denied by the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Plaintiff filed a petition for *de novo* review of the naturalization denial in this Court.

Presently before me are cross-motions for summary judgment, requesting that I determine whether Plaintiff is eligible for naturalization as a matter of law.[1]  For the reasons set forth below, I conclude that Plaintiff is ineligible for naturalization. As such, Plaintiff's motion will be denied and the Government's motion will be granted.

---

[1] Both parties style their respective motions as a motion for judgment on the pleadings or in the alternative for summary judgment. The distinction between a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) and a motion for summary judgment under Fed.R.Civ.P. 56 is immaterial in this case. Both parties agree that there are no genuine issues of disputed material fact, and that this matter is ripe for decision on the record before the Court. I will thus treat the parties' motions as motions for summary judgment.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed:

On May 22, 2003, Plaintiff entered the United States lawfully under a J-1 exchange visitor visa. On April 27, 2004, Plaintiff married Larisa Levine[2], a United States citizen. On August 10, 2004, Levine filed an I-130 Petition for Alien Relative on behalf of Plaintiff, and Plaintiff concurrently filed an I-485 Application to Adjust Status to Lawful Permanent Resident.[3] On February 16, 2006, Plaintiff and Levine were interviewed together by a USCIS officer, and the I-130 Petition was approved. On February 7, 2007, Plaintiff and Levine divorced, ending the marriage. Three months later, on May 7, 2007, USCIS granted Plaintiff's I-485 application, and Plaintiff's immigration status was adjusted to that of a lawful permanent resident. (Compl. ¶¶ 10-12, 15-16; Gov't's Statement of Undisputed Facts ¶¶ 2-4, 6, 8; Pl.'s Counter Statement of Facts ¶¶ 1-3, 6, 7.)

On April 2, 2012, Plaintiff filed an N-400 Application for Naturalization.[4] On January 2, 2013, USCIS denied Plaintiff's naturalization application, finding that, because Plaintiff was

---

[2] Plaintiff's submissions refer to Ms. Levine as Ms. Levin (without the final "e"). I will use the spelling (with the final "e") as it appears in the USCIS documents. (Attached to compl. as Exhs. A-B.)

[3] The I-130 Petition for Alien Relative and the I-485 Application to Adjust Status to Lawful Permanent Resident are the two required forms for applying for lawful permanent residency based on a family relationship to a United States citizen. The I-130 Petition, filed by the citizen, serves to establish her relationship to the alien. The I-485 Application, filed by the alien, serves to establish his eligibility to adjust his immigration status to that of a lawful permanent resident. Where, as is the case here, an alien seeks to adjust his status based on marriage to a citizen, the two forms may be filed concurrently. Green Card for an Immediate Relative of a U.S. Citizen, U.S. CITIZENSHIP AND IMMIGRATION SERVS. (Jan. 27, 2016), http://www.uscis.gov/green-card/green-card-through-family/green-card-immediate-relative-us-citizen.

[4] While the USCIS documents which are attached to the complaint state that Plaintiff filed his naturalization application on April 2, 2012, Plaintiff states in his complaint that he filed the application in December 2012. (Compare Compl. ¶ 18 with USCIS Denial of Jan. 2, 2013, attached to Compl. as Exh. A.) This discrepancy is immaterial.

divorced from Levine at the time his I-485 application was granted, he was ineligible for permanent residence at the time such status was granted, and is thus ineligible for naturalization. On February 1, 2013, Plaintiff appealed that finding by filing an N-336 Request for Hearing to reconsider the denial of the naturalization application. On March 27, 2014, USCIS held a hearing to consider Plaintiff's appeal. On September 11, 2014, USCIS affirmed the denial of Plaintiff's naturalization application. (Compl. ¶¶ 18-19, 22-24; Gov't's Statement of Undisputed Facts ¶¶ 9-13; Pl.'s Counter Statement of Facts ¶¶ 10-14.)

On January 9, 2015, Plaintiff filed an action in this court pursuant to 8 U.S.C. § 1421(c) for *de novo* review of the administrative denial of his naturalization application. On April 16, 2015, the Government filed a motion for summary judgment. On May 14, 2015, Plaintiff responded to the Government's motion and concurrently filed his own motion for summary judgment. On June 29, 2015, I held a hearing, where Plaintiff and the Government presented argument on the cross-motions.[5] These motions are now ripe for disposition.

## II. STANDARD OF REVIEW

The denial of a naturalization application is reviewed *de novo* by the district court pursuant to 8 U.S.C. § 1421(c). Where there is no genuine issue of material fact, the court may dispose of the case by way of summary judgment. See Chan v. Gantner, 464 F.3d 289, 296 (2d Cir. 2006).

---

[5] Plaintiff requested this hearing, which he is entitled to as a matter of statutory right. 8 U.S.C. § 1421(c) ("[T]he court . . . shall at the request of the petitioner, conduct a hearing de novo on the [naturalization] application.") (emphasis added). Before the hearing, Plaintiff and the Government agreed that neither party would present testimony, and that the hearing would be limited to arguing the cross-motions. To that end, the parties submitted a "Joint Statement of Undisputed Facts" which was accepted into evidence at the hearing. (Exhibit C-1.) The Joint Statement mirrors the factual background that I have recounted here.

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. Kaucher v. Cnty of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. (citing Anderson, 477 U.S. at 248). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

4

affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed.R.Civ.P. 56(c)(1)(A). Only evidence which is admissible at trial may be considered in ruling on the motion. Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995).

Where, as here, cross-motions for summary judgment have been filed, the summary judgment standard remains the same, and each motion should be considered separately. Williams v. Phila. Hous. Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd 27 F.2d 560 (3d Cir. 1994).

## IV. DISCUSSION

The requirements for naturalization are set forth at 8 U.S.C. § 1427. The burden is on the applicant "to show his eligibility for citizenship in every respect." Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967). The applicant generally meets this burden if he shows by a preponderance of the evidence that he has satisfied all of the requirements to become a United States citizen. See 8 C.F.R. § 316.2(b). Any doubts regarding eligibility "should be resolved in favor of the United States and against the [applicant]." Berenyi, 385 U.S. at 637 (internal quotation marks omitted).

To be eligible for naturalization, an applicant must show, among other things, that he was "lawfully admitted for permanent residence" at least five years ago. 8 U.S.C. § 1427(a); see also 8 C.F.R. § 316.2(a)(2). The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The Third Circuit has plainly distinguished between the

substantive—as opposed to the procedural requirements—of permanent residence. See Martinez v. Att'y Gen. of the U.S., 693 F.3d 408, 414 (3d Cir. 2012) ("[A]n alien [] has been 'admitted' even if he did not meet the substantive legal requirements for admission at that time, although he was not 'lawfully admitted for permanent residence' [] unless he were substantively in compliance with those admission requirements."); see also Gallimore v. Att'y Gen. of the U.S., 619 F.3d 216, 224 (3d Cir. 2010) ("[T]o be 'lawfully admitted for permanent residence' an alien must have complied with the substantive legal requirements in place *at the time she was admitted for permanent residence*.") (quoting In re Koloamtangi, 23 I. & N. Dec. 548, 550 (BIA 2003)) (emphasis in Gallimore)). Therefore, an alien has not been "lawfully admitted for permanent residence" where he "obtained [his] permanent resident status by fraud, or had otherwise not been entitled to it." Gallimore, 619 F.3d at 224 (citing Koloamtangi, 23 I. & N. Dec. at 550)).

Here, Plaintiff received lawful permanent resident status on the basis of his marriage to Larisa Levine, a United States citizen. It is true that Plaintiff was married to Levine at the time of application and interview before a USCIS officer and when the I-130 Petition for Alien Relative was approved. However, Plaintiff and Levine were already divorced by the time USCIS approved Plaintiff's I-485 Application to Adjust Status. Because Plaintiff's eligibility for lawful permanent resident status was based upon the approved I-130 Petition, he became ineligible to adjust to that status once the divorce was finalized. See 8 C.F.R. § 205.1 (a)(3)(D) (stating that the approval of a spousal petition is automatically revoked where a marriage is resolved "before the decision on [the alien's] adjustment application becomes final.") As such, Plaintiff was not "lawfully admitted for permanent residence," and he fails to meet the substantive legal requirements for naturalization. 8 U.S.C. § 1427(a); see also Gallimore, 619 F.3d at 224.

6

Notwithstanding Plaintiff's ineligibility for lawful permanent resident status at the time it was granted, the Government concedes that it cannot now rescind such status. (Gov't's Motion at 7; Gov't's Reply at 1.) Indeed, while 8 U.S.C. § 1256(a) allows the Government to rescind permanent resident status where "the person was not in fact eligible for such adjustment of status," the Government may do so only "within five years after the status of a person has been [] adjusted." This five-year statute of limitations thus precludes the Government from rescinding Plaintiff's permanent resident status, which he received over eight years ago. But that issue is not before me.

Nonetheless, Plaintiff points to the five-year statute of limitations period under § 1256(a), and essentially argues that because the Government is time-barred from rescinding his permanent resident status, it follows that he is eligible for naturalization, without regard to whether his adjustment of status was in compliance with the substantive legal requirements of becoming a lawful permanent resident. (Pl.'s Motion at 15-16.) Plaintiff's argument is not supported by established law.

It is true that the Third Circuit has held that the statute of limitations set forth in § 1256(a) applies to rescission and removal proceedings. Garcia v. Att'y Gen. of the U.S., 553 F.3d 724 (3d Cir. 2009); Bamidele v. INS, 99 F.3d 557 (3d Cir. 1996). However, neither Garcia nor Bamidele extend the five-year period of limitations beyond the rescission and removal context.[6] In other words, while the statute precludes the Government from rescinding Plaintiff's

---

[6] Plaintiff further points to a decision from the Board of Immigration Appeals, Matter of Saunders, 16 I. & N. Dec. 326 (BIA 1977), as standing for the proposition that the five-year statute of limitations extends beyond the rescission and removal context. This assertion is also off-base. While the concurring opinion in Saunders does suggest that the "five-year rule should . . . operate as a full statute of limitations," there is no explicit reference to naturalization, that language was not adopted by the majority opinion, nor has it been endorsed by any court in the almost forty years since that opinion was issued. Id. at 334 (concurring).

7

permanent resident status, this does not mean that aliens who are later determined to have been ineligible for permanent resident status at the time such status was granted are entitled to the additional benefit of citizenship. Courts in our district (including this Court), when presented with this same issue of statutory interpretation, have made this point clear. See Jin Mei Lin v. Napolitano, 2013 WL 2370588, *5 (E.D. Pa. 2013) (stating that while the statute of limitations in "§ 1256(a) applies to bar removal proceedings . . . . [r]escission and removal proceedings are distinct and separate matters from an alien's eligibility to naturalize" such that an application for naturalization is properly denied where an alien received lawful permanent resident status on the basis of a marriage that was later determined to be fraudulent), aff'd, No. 14-2777, slip op. at 3 (3d Cir. filed Sept. 1, 2015) ("Eligibility for naturalization depends on the applicant's lawful admission for permanent residence, and we have held that a person has not been lawfully admitted for permanent residence if that status is obtained by fraud.");[7] Adegoke v. Fitzgerald, 784 F. Supp. 2d 538, 541-42 (E.D. Pa. 2011) (noting that because § 1256(a) does not extend beyond the rescission and removal context, an alien who "misrepresented his immigration history in order to obtain his [lawful permanent resident] status" is ineligible for naturalization); Ros v. Napolitano, 2013 WL 3479419, *9 (E.D. Pa. 2013) (citing Adegoke and Jin Mei Lin's interpretation of § 1256(a) for the proposition that "[r]escission and naturalization are two entirely distinct legal questions []. The fact that the [alien] may remain in this country as a Lawful Permanent Resident, despite having obtained her lawful permanent resident status through fraud, does not mean she must be granted citizenship.")

---

[7] I received Plaintiff's counsel's November 5, 2015 letter which requests further briefing or argument given that the Third Circuit's recent opinion in Jin Mei Lin was issued after the parties had already briefed and argued the cross-motions for summary judgment. Because the Third Circuit's opinion upheld the District Court's denial of naturalization, further briefing or argument is neither helpful nor necessary.

8

Finally, the fact that these three district court cases stemmed from instances where aliens obtained their permanent resident status through a fraudulent misrepresentation, as opposed to Plaintiff's situation where he failed to inform USCIS that his marriage had dissolved, is of no moment.[8]  See Gallimore, 619 F.3d at 224 (stating that an alien has not been "lawfully admitted for permanent residence," and is thus ineligible for naturalization, where he "obtained [his] permanent resident status by fraud, or had otherwise not been entitled to it.") (emphasis added). I therefore am compelled to conclude that Plaintiff is ineligible for naturalization.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion will be denied, and the Government's motion will be granted.

An appropriate Order follows.

---

[8] Plaintiff makes another equity-based argument as to why he is eligible for naturalization. Plaintiff contends that, had there not been a substantial delay on the part of USCIS in adjudicating his adjustment application, he would have received his conditional permanent resident status while he was still married to Ms. Levine, and he would subsequently have received lawful permanent resident status after having informed USCIS that his marriage had dissolved.  While I acknowledge that Plaintiff may be eligible for naturalization had this chain of events occurred as described, this argument is, as Government counsel stated at the hearing, a "red herring."  See INS v. Pangilinan, 486 U.S. 875, 883-85 (1988) (explaining that courts cannot use equitable doctrines to excuse an alien's failure to meet all of the statutory requirements for naturalization).

9